LEWIS L. WILCOX, Administrator of JOHANNA G. WILCOX, deceased, *vs.* THE WILMINGTON CITY RAILWAY COMPANY, a corporation of the State of Delaware.*

*Case—Practice—Pleading— Venire—Damages for Death of Married Woman—Measure of Damages—Evidence—Funeral Expenses—Nonsuit.*

1. A case at issue, either at law or on the facts, at any time prior to the 20 days required for publication, should be added to the argument list or the trial list by prothonotary, and the time necessarily consumed by the printer in publishing the list should not work to the detriment of suitors in getting their cases at issue and advertised.

2. Where there are several counts in a declaration, and the defendant has filed separate special demurrers, assigning in each special and different causes of demurrer, he has a right to have an issue in law upon each one of the separate demurrers, if instead of joining issue upon each of the special demurrers the plaintiff treats them as one general demurrer to the declaration, it is irregular and not consistent with the practice or general rules of pleading. In the latter case the joinder in demurrer will be stricken off and the case stricken from the trial list because it was not at issue on the demurrer when it was put upon the list.

3. Under the rules of Court, when an amendment is asked for it must be presented to the Court in writing.

4. Where a declaration has been amended and pleas filed to certain counts and other counts demurred to, but no replications or joinder in demurrer filed by the plaintiff at the time of the issuing of the *venire* or thereafter, said *venire* will be quashed on the ground that it was improperly issued, because there was no issue of fact to be tried by the jury.

5. In an action by an administrator for damages for the death of the plaintiff's intestate, which is alleged to have been caused by the negligence of defendant's servants in running a street car, it is not competent to ask a witness where the conductor was after the car stopped, the deceased being then under the front of the car. What the conductor was doing after the accident could not enter into the question as to the careless running at the time the accident happened.

6. A witness cannot be asked whether the deceased was a good woman or bad woman, but may be asked, "What was the health of the deceased." And it is competent to inquire as to her industry, if tending to show that the deceased woman's life had a value as a life independent of her husband, but not if the industry referred to had reference to decedent's work around her house—her own home.

*NOTE.—Certain preliminary questions were decided in this case at the November Term, 1898; the trial not taking place until May 8, 1899. See also *1 Pennewill*, 245.

7. The husband may be asked whether the deceased received any money per week independent of himself, as it goes to show the value of the life of the decedent independent of the husband, but the plaintiff will not be permitted to show what the deceased received from her husband per week and what she saved from that amount after paying household expenses. The question will be limited to what was the value of the life independent of the husband and his relations to her.

8. In such an action the question, "Was the estate of the deceased put to any expense because of funeral expenses," held inadmissible.

9. It is competent to show the earning capacity of the deceased, but the question must have reference to her earning capacity at the time of her death. And in order to ascertain the measure of damages, the plaintiff will be permitted to show the age of the deceased, the condition of her health at the time of her death, that she was an industrious woman, and what were her habits in respect to economy or saving.

10. Nonsuit will be granted when plaintiff has failed to connect the accident with the defendant.

*(November 26, 1898; May 8, 1899.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting at the November Term, 1898. (Trial beginning May 8, 1899, before LORE, C. J., and PENNEWILL and BOYCE, J. J.)

*Robert G. Harman* and *Horace G. Knowles* for plaintiff.

*Willard Saulsbury and Walter H. Hayes* for defendant.

Superior Court, New Castle County, November Term, 1898, (and February Term, 1899.)

ACTION ON THE CASE (No. 194 September Term, 1897). Demurrer to the narr was filed October 21, 1898. The trial list went to press on November 2d, and was delivered to the prothonotary November 7th, twenty-one days before the convening of the November Term of Court. Rule No. 13 of the Rules of the Superior Court, requires the prothonotary to have the trial list in

WILCOX'S ADMR. vs. W. C. RY.          159

OPINION OF COURT—DEMURRER.

the hands of the Bar, with the cases advertised twenty days before the convening of Court. Joinder in the demurrer in the above stated case was filed on the 7th day of November, the same day that the trial list was distributed.

Counsel for plaintiff contended that as the case was at issue twenty-one days before Court, and notwithstanding that the prothonotary's copy was in the hands of the printer when issue on the demurrer was joined, yet that the Court should direct that this case be placed on the argument list.

The Court unanimously ruled that a case coming at issue on pleading or on demurrer any time prior to the twenty days required for publication, should be added to the trial or argument list by the prothonotary with pen and ink, and that the time necessarily consumed by the printer in publishing the trial list should not work to the detriment of suitors in getting their cases at issue and advertised.

There were four counts in the narr filed in the case, and to each count a special demurrer was filed by defendant's attorneys.

The following joinder in demurrer was filed by plaintiff's attorneys, viz:

"And the plaintiff, by Harman & Knowles, his attorneys, saith that the said declaration and the matters therein contained in manner and form as the same are herein stated and set forth are sufficient in law for him, the said plaintiff, to have and maintain his aforesaid action thereof against the said defendant, and the said plaintiff is ready to prove the same as the Court here shall direct and award."

On December 13, 1898, defendant's attorney came into Court and moved that the joinder in demurrer be stricken from the record and that the case be taken from the argument list, for the reason that there was no joinder in any issue in the case and that the Court could not formulate any judgment on the demurrer and the joinder in demurrer filed.

The plaintiff's attorneys contended that the joinder in demur-

rer was applicable to each demurrer to each of the counts in the declaration and took issue on all of them; and that the demurrers filed were general demurrers for duplicity, and that the plaintiff was not required to file a joinder in demurrer to each demurrer.

SPRUANCE, J.:—This declaration contains four counts. In general, the theory of a declaration containing different counts is, that each count is for a different cause of action.

To each of the counts of the declaration the defendant's attorney has filed a separate special demurrer, assigning in each special and different causes of demurrer.

He has a right to have an issue in law upon each one of these separate demurrers, and he has not got it. Instead of joining issue upon each of these special demurrers, the plaintiff's attorneys have chosen to treat these four separate demurrers as one general demurrer to the declaration, which they are not.

This is irregular, and there is, so far as we know, no practice to sustain it. The argument in favor of it does not commend itself to the judgment of the Court, nor is it consistent with the general rules of pleading.

We think this joinder in demurrer should be stricken off, and that the case should be stricken from the trial list, because it was not at issue on the demurrers when it was put upon the list, and it is so ordered.

LORE, C. J., (dissenting):—I am sorry I cannot agree with the majority of the Court. Authorities have not been cited. The provision in *Chitty on Pleading* relating to this matter as to each count, is where only a part of a declaration has been demurred to. It is conceded here that in four distinct demurrers the entire declaration is covered.

Suppose the form of the joinder in this demurrer had been repeated four times—as to the first count, the second count, the third count and the fourth count; would that have made it any more valid as applying to each particular count than having the

WILCOX'S ADMR. vs. W. C. RY.          161

MOTION TO AMEND---OPINION OF COURT.

same joinder applying to each of the counts as well as to the whole declaration?

Pleading certainly does not mean mere multiplicity of words. It means something in substance. Where the whole declaration is demurred to, whether in one or several demurrers, the general joinder covers the entire legal objection. It would seem to be the refinement of technicality to require the joinder to set forth that this applies to the first count, and this applies to the second count, and this applies to the third count and this applies to the fourth count when, though general, it does apply to each and all. The whole includes all the parts. In the absence of authority, it seems to me that both reason and good pleading require no more than has been done in this case, especially as it goes only to the form and not to substance.

*Mr. Harman* then asked leave to amend the joinder in demurrer so as to apply to each of the four special demurrers.

*Mr. Saulsbury:*—The case is now off the argument list. There is a rule of this Court that where an amendment is asked for, it must be presented to the Court in writing by the person asking leave to amend, and I therefore ask that the counsel first have the amendment in Court in writing and we will take that question up when it is presented.

LORE, C. J.:—The rule is that the amendment must be before us in writing. It is not so before us. You have not complied with that rule.

Defendant's attorney was ruled to file pleas within fifteen days, and accordingly filed the following plea:

"And the said defendant, by Willard Saulsbury, its attorney, comes and defends the wrong and injury when, &c., and prays judgment of the said writ of the said plaintiff; because it says that the said Johanna G. Wilcox, the intestate of the said plaintiff, before

the time of the commencement of this suit, and at the time of the happening of the alleged injuries and up to and at the time of her death, was a married woman living with and not separate from her husband, to wit, at New Castle County, and that she was not possessed of nor entitled to any goods or chattels, rights or credits of any kind whatsoever of which administration could be granted by the Register of Wills for the county aforesaid; and this it, the said defendant, is ready to verify, wherefore because the said Johanna G. Wilcox, the said intestate, was not at the time of her death entitled to any goods or chattels, rights or credits, upon or of which letters of administration could be granted by the Register of Wills, in and for New Castle County, the said defendant prays judgment of the writ aforesaid, and that the same may be quashed, &c."

Three days after the expiration of the fifteen-day rule defendant's attorney came into Court and asked leave to amend his aforesaid plea.

Plaintiff's attorneys thereupon moved that said plea be stricken from the record and leave granted to sign judgment as for want of a plea; contending:

*First.* That the plea filed in the above stated case was purely and clearly frivolous, dilatory, vexatious and wholly nugatory, and so appeared upon its face, by reason of the fact that it attempted to bring before the Superior Court for determination the validity of the grant of letters of administration by the Register of Wills, in and for New Castle County, to the plaintiff in this case. In other words, it seeks to *collaterally attack* and thereby *revoke* the said letters of administration, granted by the Register of Wills, in the Superior Court of New Castle County, by a proceeding not being by way of appeal from the Register of Wills' Court.

"There shall be an appeal to the Superior Court from the Register exercising jurisdiction touching the grant or revocation of letters;"   *   *   *   "but his act or sentence in any of

WILCOX'S ADMR. vs. W. C. RY.        163

OPINION OF COURT—VENIRE QUASHED.

these particulars *shall not be called in question* except before him, or
on *appeal."*

*Rev. Code, 673, Sec. 15.*

*Second.* That where a plea upon its very face appears to be
frivolous, dilatory, vexatious and nugatory, the Court, upon motion,
will order said plea stricken from the record and grant leave to
sign judgment as for want of a plea.

LORE, C. J.:—The plea is ordered stricken out upon applica-
tion, and leave is granted the defendant to amend the same within
five days, upon the payment of the costs accrued up to this date.

After the case was put at issue and marked for trial by a
special jury, the said jury was struck and the case set for trial at
the May Term, 1898.   On June 17th the case was continued to
September 12, 1898, being one week before the opening of the
September Term of Court.   On June 17th leave to amend was
granted upon application of the plaintiff; July 5th amended decla-
ration was filed; July 19th pleas were filed to four counts and de-
murrer to one count of the declaration; but no replications or
joinder in demurrer were filed by plaintiff.   September 6th *venire*
to sheriff was issued, returnable September 12, 1898.

On September 12th, the day set for the trial of the case, the
jury being present, *Willard Saulsbury* and *Walter H. Hayes* for
defendant, moved that the *venire* be quashed on the ground that it
was improperly issued, there being no issue of fact to be tried by
the jury.

The Court (consisting of LORE, C. J., and SPRUANCE and
GRUBB, J. J.), ordered the *venire* quashed and the case continued.

On May 8, 1899, at an adjourned session of the February
Term, the case came on for trial by a special jury before Chief
Justice Lore and Associate Justices Pennewill and Boyce.

The following questions during the course of the trial were objected to and passed upon :

Louis Weidenman, a witness for plaintiff, was asked where the conductor was after the car stopped (the deceased being then under the front of the car.).

Objected to as irrelevant, and after argument the objection was sustained, the Court, through Chief Justice Lore, announcing that the question as to what occurred " after the car stopped " was not competent; that what the conductor was doing after the accident could not enter into the question as to the careless running at the time the accident happened.

The witness Ellen G. Wogan was asked :
What, if you know, was the character and reputation of Johanna G. Wilcox in the community and among those who knew her?

The question was objected to on the ground that the only damages the plaintiff could recover, if any, were pecuniary damages to the estate caused by the death.

Counsel for plaintiff explained that the object of the question was to show the kind of woman the deceased was, in order to follow it up by establishing the value of her life as a life—whether she was a good or bad woman, an industrious or lazy woman, and the question was accordingly changed as follows :

Q. If you know, was Mrs. Wilcox a good woman or bad woman?

Objected to as irrelevant.

LORE, C. J. :—We do not think this is competent.
The plaintiff excepted, and at the request of the Court, that if

they had any authorty for such a question, to produce it, the following authorities were cited :

*Penn. R. R. Co. vs. McCloskey's Admr., 23 Pa. St., 530 ; 33 Pa. St., 526.*

*Mr. Hayes,* of counsel for defendant, cited in reply, *Maxwell's Admr. vs. The Wilmington City Railway Co., 1 Marvel, 208,* which he contended was decisive of the question arising in the present case. After further argument, Mr. Harman stated that he would withdraw the previous question and confine it to " industry."

Q What was the health of Mrs. Wilcox ?

Objected to as irrelvant.

The objection was overruled, and the defendant excepted.

The witness Amelia French was asked by Mr. Knowles what kind of a woman was Mrs. Wilcox as regards her industry and ability to perform her duties at her home.

Objected to as irrelevant.

LORE C. J.:—Do you propose to show by your testimony that this woman's life had a value as a life, independent of her relation to her husband?

*Mr. Knowles* :—Yes sir ; that is exactly the point.

LORE, C. J.:—We think that question is not proper as it now stands. That is qualifying her as his wife.

Q. If you know, was she or was she not, from your acquaintance with her, an industrious woman ?

The above question was objected to as irrelevant ; the question was admitted by the Court and an exception noted for the defendant. The answer of the witness was taken, but on cross-examina-

tion, it being brought out by defendant's counsel that the industry referred to in the answer of the witness had reference to the decedent's work around the house, her own home, on application of defendant's counsel said testimony was ordered stricken out.

Louis L. Wilcox, the plaintiff, being recalled, was asked: Did, or not, your wife receive any money per week, independent of yourself?

Objected to, because it was not alleged in the declaration, and it would be special damages.

LORE, C. J.:—We think that is admissible, as going to the value of the life of the decedent, independent of the husband.

The defendant excepted.

A. No, sir; not independent of myself.

*Mr. Harman* here contended that notwithstanding the answer of the witness, he had a right to show that Mrs. Wilcox got so much per week from her husband, that her household expenses were so much, that there was a balance out of that which was hers, and that had she lived eighteen years she would have gotten that amount multiplied by fifty-two weeks and that multiplied by eighteen, and therefore her death, caused by this accident, was a pecuniary loss of that much.

LORE, C. J.:—We expressly limited this question as to what was the value of the life independent of the husband and his relations to her—This is a transaction by the deceased with the administrator, and is clearly cut out by the statute in that behalf.

Q. Was the estate put to any expense because of funeral expenses?

Objected to on the ground that it was not a debt of the estate, but a debt of the husband, and was therefore irrelevant.

*Galloway vs. Est. McPherson, 35 N. W., 114; Sayers vs. Getty, 41 Mich., 580; Cunningham vs. Reardon, 98 Mass., 538; Stapel's Appeal, 52 Conn., 425; In re Werninger's Est., 100 Cal., 345; Bradshaw vs. Beard, 104 C. L., 344.*

*Mr. Harman:*—The *Revised Code, 676,* provides as follows: "Executors and administrators shall pay demands against the deceased in the following order:" "First, funeral expenses."

The administrator is thus under the statute of our State liable for and compelled to pay the funeral expenses of the deceased of whatever sex or relation the deceased may be.

*Murphy vs. N. Y. C. & H. R. R. R. Co., 88 N. Y., 445; Tiffany on Death by Wrongful Act, Sec. 157, and cases cited.*

The Court held the matter under advisement over night and upon the reassembling of the Court the next morning sustained the objection to the question.

The plaintiff excepted.

The witness Emma Ahrens, after testifying that she was the daughter of the deceased and step-daughter of the plaintiff, was asked by Mr. Knowles:

Who provided you with your clothing and supported you before your mother married Mr. Wilcox?

Objected to as irrelevant, the witness not being dependent on the plaintiff, but being a married woman, and the present action not being a suit brought by her.

LORE, C. J.:—The inquiry is as to a condition long anterior to this death, indeed anterior to the marriage, as we understand the question. The test, according to your own theory, is her earning

capacity at the time of her death. But you are going back to the time before the marriage. That is too far away from the time at which you are to fix the value of her life, whatever it may have been. If you want to base it upon her earning capacity, certainly the question ought to be directed to the time at which the life was taken.

Q. What earning capacity, if any, did your mother have at the time of her death?

Objected to on the ground that whatever she was earning at the time, during the lifetime of herself and husband, the latter was entitled to, as her husband.

LORE, C. J.:—The Court laid down one measure of testing in the Maxwell case (I do not now recollect any other case), and that was as to the age, ability or disposition to labor, the habits of living and expenses.

*Mr. Knowles* here explains that the purpose of the question was to show the earning capacity of the deceased, in dollars and cents, by allowing the witness to testify as to a time when her mother did work; then if, at the time of the mother's death, the conditions had been such that she had to labor—by reason of her husband's death or otherwise—that her ability to earn amounted to so many dollars a week.

LORE, C. J.:—Is not that very question one for this jury to decide? Ought you not to show the conditions which surrounded the deceased, so that the jury may judge her earning capacity in the absence of any actual earning? You are now asking the witness for an opinion as to what another person could earn.

Q. How old was your mother at the time of her death?

A. About fifty years.

Q. What was the condition of your mother's health at the time of her death.

Objected to as irrelvant.

Objection overruled, and defendant excepted.

Q. What were the habits of your mother in respect to industry, at the time of her death?

LORE, C. J.:—We are not passing upon this question which foreshadows what is the main question, viz: What in this case is to be the measure of damages. We admit this inquiry as we allowed the inquiry as to her health, to show the woman's condition, and throw light when possible on the measure of damage for the value of that life. Her health, her industry, her saving habits, or any conditions and elements of that kind must necessarily go into that. We cannot say, and do not know what the facts are, but we think this line of inquiry is permissible; that is to show that she was an industrious woman, a healthy woman, a prudent woman. We rule the question in.

The defendant excepted.

Q. What other habits besides those of industry, with respect to her saving qualities, had your mother at the time of her death?

Objected to on the same grounds as before stated.

The question was admitted, and the defendant excepted.

After the plaintiff had rested, counsel for defendant moved for a nonsuit on two grounds: (1) That there was nothing in the testimony offered by the plaintiff connecting the defendant company with the operation of the car in question or the railway upon which the car was operated. (2) Nor was it shown anywhere in the testimony that the men who operated the car in question were employees of the defendant company.

LORE, C. J.:—We have taken some time to go over the testimony which was presented, and to carefully consider the grounds presented in the motion for the nonsuit. After careful consideration, we think this nonsuit ought to be granted.

The Court are very reluctant to grant the nonsuit. We would much prefer that this case should be given to the jury and be determined by them upon the merits. But it is a duty that we have assumed and a duty which we must meet. In this case a very material part of the case was not only to show that this woman was killed, but that she was killed by some person or thing for which these defendants are responsible. We have been unable to see that the plaintiff has connected this accident with these defendants, or that it has been shown that this road was operated by the defendant company or that the car was owned by said company, or that the parties running it, and who caused the accident, were the employees of the company—very material questions which meet us at the threshold of a case of this character.

In the absence of such evidence therefore, we do not think that the case ought to go to the jury and we order a nonsuit.

*Mr. Knowles:*—If the Court please, we decline to take a nonsuit.

LORE, C. J.:—Gentlemen of the jury:—For the reasons that we have given above in your hearing in ordering that the nonsuit be entered, we direct you to return a verdict for the defendant.

The plaintiff excepted.

                                        Verdict for defendant.